UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:22-cv-61463-JEM – MARTINEZ-BECERRA

APOLONIO ALVARADO, EDWIN
ZAMBRANO, and JESUS RAMIREZ

      Plaintiffs,

v.

YES NAKED TACO PROM, LLC,
YES HOSPITALITY, LLC, YES DREAM,
LLC, RALPH PAGANO, and JAY N.
SHIRODKAR,

      Defendants.

_____/

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION & FACILITATION OF COURT-
AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216 [ECF NO. 25]**

Defendants Yes Naked Taco Prom, LLC, Yes Hospitality, LLC, Yes Dream, LLC, Ralph

Pagano and Jay N. Shirodkar hereby submit this Memorandum of Law in Opposition to Plaintiffs'

Motion for Conditional Certification & Facilitation of Court-Authorized Notice Pursuant to 29

U.S.C. § 216 [ECF No. 25] (Plaintiffs' "Motion").

**I.**     **Introduction and Summary of Argument**

The lead Plaintiff in this case, Apolonio Alvarado ("Alvarado"), was previously employed

by Naked Taco.[1]  Alvarado ceased being a Naked Taco employee in May of 2021.  The very next

month, Alvarado formed a company, Alvarado's Cleaning Services of Miami LLC ("Alvarado's

---

[1]    Naked Taco currently has three locations: Boca Raton, Coconut Creek and Miami Beach.  Each location is its own corporate entity, and all Naked Taco employees are compensated through Yes Hospitality, LLC.  Defendants deny and refute that Ralph Pagano and Jay N. Shirodkar are "employers" under the FLSA or proper Defendants in this case.  With the foregoing in mind, and without waiving any argument that Plaintiffs have named incorrect Defendants, for ease of reference Defendants will use "Naked Taco" to refer to the Defendant business at issue.

Company"), and Alvarado's Company began providing outsourced cleaning and related services to Naked Taco. ***From June of 2021 until Naked Taco terminated Alvarado's Company's services in late June of 2022, Naked Taco paid Alvarado's Company over $238,000.00***. Angry about his Company's services being terminated, Alvarado recruited some of *his* employees and filed this lawsuit.

Defendants use the phrase "his employees" because the other four Plaintiffs in this case worked for Alvarado's Company. Like Alvarado, three of the other four Plaintiffs – Edwin Zambrano ("Zambrano"), Jesus Ramirez ("Ramirez") and Antonio Gomez ("Gomez") – were previously employed by Naked Taco. Each of them ceased being a Naked Taco employee at approximately the same time that Alvarado formed his Company. Naked Taco has no record of Plaintiff Felix Antonio Jimenez Suriano ("Suriano") ever being an employee of Naked Taco.

In their Motion, Plaintiffs fail to allege any "policy or practice" by Defendants which would have supposedly resulted in the failure to properly pay overtime. That is because there was no such policy or practice. Instead, Plaintiffs merely allege a boilerplate failure to pay overtime – which is insufficient as a matter of law to support a motion for conditional certification.

**In fact, completely contrary to their sworn declarations under oath,** *Alvarado and Ramirez were demonstrably paid overtime as Naked Taco employees*. *Gomez was also demonstrably paid overtime as a Naked Taco employee – an average of about 25 overtime hours per week*.

Plaintiffs fail to specifically identify any discrete class. Instead, Plaintiffs broadly, and seemingly without any identified temporal limitation, seek conditional certification of a class of "all hourly employees who were either: 1) not paid the correct overtime premium for their overtime hours (Underpaid Overtime); and/or 2) were not paid all wages, regardless of the hourly rate, for

all hours worked (Underpaid Hours)."  Motion at p. 15.  As to the latter point, Plaintiffs have not asserted a claim for "underpaid hours" separate and distinct from their claim for "unpaid overtime," and thus under no circumstances can a class be conditionally certified as to that point. But beyond that, *no* class should be conditionally certified.

Ultimately, Plaintiffs' claims are inherently, even if not expressly, linked to them working for Alvarado's Company in the context of the Company providing services to Naked Taco.  As such, any "similarly situated class member" would have necessarily also been an employee of Alvardo's Company.  But as with Suriano, those persons may have never been employed with Naked Taco.  Indeed, if those persons believe they were underpaid, then perhaps they should first look to Alvarado's Company, which may not have properly distributed its employees' respective portions of the $238,000.00+ that Naked Taco paid to Alvarado's Company.

On top of the foregoing fatal flaws in Plaintiff's Motion, the Motion blatantly violates S.D. Fla. L.R. 7.1(c)(2) by exceeding 20 pages without the Court's permission.  In addition, at the time the Motion was filed, Plaintiffs were not even eligible to maintain a purported collective action because they had not filed their own consent forms.

Plaintiff's Motion should be denied.

## II.   Facts

### A.   Naked Taco Complies with the FLSA

Ralph Pagano ("Pagano") is a well-known chef and television personality.  In addition to owning and operating various restaurants, he has appeared on *Hell's Kitchen* and *Iron Chef.* Pagano Declaration (Exhibit "A," hereinafter "Pagano Dec.") at ¶ 3.  Pagano opened the first Naked Taco location in 2013.  Id. at ¶ 4.  In June of 2017, Pagano was opening a restaurant in Bimini when he suffered life-threatening burns while preparing food in the kitchen.  Id. at ¶ 5.

Pagano suffered second- and third-degree burns on more than 40% of his body, and he ultimately underwent four skin graft procedures.  Id.  Pagano required intensive inpatient occupational and physical therapy to regain the use of his hands and his ability to walk.  Id.  In February of 2021, Jay N. Shirodkar ("Shirodkar") joined Naked Taco as a co-owner.  Id. at ¶ 6; Shirodkar Declaration (Exhibit "B," hereinafter "Shirodkar Dec.") at ¶ 3.

Naked Taco currently operates three restaurants in South Florida, with each location being its own corporate entity:  Boca Raton, Coconut Creek and Miami Beach.  Pagano Dec. at ¶ 7; Shirodkar Dec. at ¶ 4.  All Naked Taco employees are compensated through Yes Hospitality, LLC, and Yes Dream, LLC represents a holding company.  Pagano Dec. at ¶ 7; Shirodkar Dec. at ¶ 4.[2]

Naked Taco utilizes a point-of-sale ("POS") system known as "Toast," which is commonly used within the restaurant industry.  Pagano Dec. at ¶ 8; Shirodkar Dec. at ¶ 5.  The POS system includes employee timekeeping, whereby employees clock-in and clock-out at the beginning and end of shifts and for lunch breaks.  Pagano Dec. at ¶ 8; Shirodkar Dec. at ¶ 5.  Employees are assigned their own individual code to record their working time.   Pagano Dec. at ¶ 8; Shirodkar Dec. at ¶ 5.

Naked Taco complies with all applicable wage and hour laws, including the FLSA.  Pagano Dec. at ¶ 9; Shirodkar Dec. at ¶ 6.  Naked Taco's employee handbook sets forth detailed employee timekeeping requirements and procedures.  Pagano Dec. at ¶ 9; Shirodkar Dec. at ¶ 6.  Employees use the POS system to record their working time, and they are then paid accordingly – including any and all overtime.  Pagano Dec. at ¶ 9; Shirodkar Dec. at ¶ 6.  Employees are paid via check or direct deposit with all required deductions withheld.  Pagano Dec. at ¶ 9; Shirodkar Dec. at ¶ 6.

---

[2]        Naked Taco currently intends to open new Florida locations in Kendall, Davie, Wellington and Naples.  Pagano Dec. at ¶ 7; Shirodkar Dec. at ¶ 4.

Although customers may provide tips to employees in cash, Naked Taco does not compensate its employees via cash.  Pagano Dec. at ¶ 9; Shirodkar Dec. at ¶ 6.

Plaintiffs' vague allegations about them, and supposedly others, not receiving overtime compensation are flat-out false.  To date in 2022, Naked Taco's three locations have paid the following average amounts of overtime *per month*:

| Location | Total Average OT Hours Paid Per Month | Total Average OT Amounts Paid Per Month |
|---|---|---|
| Miami Beach | 473.42 OT Hours | $10,932.21 |
| Coconut Creek | 466.07 OT Hours | $10,697.05 |
| Boca Raton | 430.48 OT Hours | $10,544.65 |

Shirodkar Dec. at ¶ 7.  Similar average amounts were paid each month in 2021 (the Boca Raton location opened in January this year):

| Location | Total Average OT Hours Paid Per Month | Total Average OT Amounts Paid Per Month |
|---|---|---|
| Miami Beach | 538.28 OT Hours | $9,998.78 |
| Coconut Creek | 454.21 OT Hours | $10,127.38 |

Id.  These amounts exceed industry averages.  Id.

Based on the average number of hourly employees at each location on a monthly basis, for 2022 the average Miami Beach hourly employee has received $176.33 in overtime payments each month; the average Coconut Creek hourly employee has received $213.94 in overtime payments each month; and the average Boca Raton hourly employee has received $234.33 in overtime payments each month.  Id. at ¶ 8.  As noted earlier and evidenced below, Plaintiffs themselves demonstrably received overtime pay.

## B.   Plaintiffs Worked for Alvarado's Company

Other than Suriano, all Plaintiffs previously were employed by Naked Taco, with Alvarado being the longest-tenured employee.  Pagano Dec. at ¶ 10; Shirodkar Dec. at ¶ 9.  Alvarado, Zambrano, Ramirez and Gomez were all hourly, non-exempt employees.  Pagano Dec. at ¶ 10;

Shirodkar Dec. at ¶ 9.

In or about May of 2021, while still a Naked Taco employee, Alvarado approached Pagano and Shirodkar to advise them that he was forming his own commercial cleaning company and to ask that Naked Taco engage his company to provide such services.  Pagano Dec. at ¶ 11; Shirodkar Dec. at ¶ 10.  Naked Taco agreed, and as a result Alvarado ended his employment relationship with Naked Taco.  Pagano Dec. at ¶ 11; Shirodkar Dec. at ¶ 10.  Alvarado's Company was formed in June of 2021, and Alvarado is the manager.  See Exhibit "C."

During the one year period of June of 2021 through June of 2022, Alvarado's Company performed cleaning services at all three Naked Taco locations.[3]  Pagano Dec. at ¶ 12; Shirodkar Dec. at ¶ 11.  Naked Taco terminated Alvarado's Company's services in June of 2022 due to repeated deficient performance.  Pagano Dec. at ¶ 12; Shirodkar Dec. at ¶ 11.  During the one year period during which Alvarado's Company performed cleaning services for Naked Taco, Naked Taco paid Alvarado's Company approximately **$238,000.00**.  Pagano Dec. at ¶ 12; Shirodkar Dec. at ¶ 11.  Copies of records detailing the payments from Naked Taco to Alvarado's Company are attached as Exhibit "D."  Pagano Dec. at ¶ 12; Shirodkar Dec. at ¶ 11.

As noted, Alvarado's employment relationship with Naked Taco ended in May of 2021 – right before he formed his Company.  Zambrano's employment relationship with Naked Taco ended in or about June of 2021; Ramirez's employment relationship with Naked Taco ended in or about April of 2021; and Gomez's employment relationship with Naked Taco ended in or about July of 2021.  Pagano Dec. at ¶ 13; Shirodkar Dec. at ¶ 13.

Alvarado, Zambrano, Ramirez and Gomez all worked for Alvarado's Company in

---

[3]     Alvarado's Company also provided cleaning services for another restaurant group, Mr. Hospitality, including services at that group's Baoli, Marion and El Tucan restaurants. Shirodkar Dec. at ¶ 12.

providing cleaning services to Naked Taco.  Shirodkar Dec. at ¶ 14.  There is no record of Suriano ever being an employee of Naked Taco.  Shirodkar Dec. at ¶ 9.[4]  Naked Taco strongly believes that Suriano worked for Alvarado's Company in providing cleaning services to Naked Taco. Shirodkar Dec. at ¶ 14.

   C.    **Plaintiffs Were Paid Overtime**

In his declaration attached to Plaintiff's Motion, Alvarado states, "under penalty of perjury," that "Naked Taco never paid me an overtime premium for overtime hours worked." Alvarado declaration at ¶ 16.[5]  That statement is demonstrably false.  Attached hereto as Exhibit "E" are payroll records for Alvarado which cover the approximate six-month period prior to Alvarado forming his Company.  Shirodkar Dec. at ¶ 15.  During that period, Alvarado was paid 81.96 hours of overtime.  Id.

In his declaration attached to Plaintiff's Motion, Ramirez states, "under penalty of perjury," that "Naked Taco would never pay me an overtime premium for overtime hours worked."  Ramirez declaration at ¶ 8.  That statement is demonstrably false.  Attached hereto as Exhibit "F" are payroll records for Ramirez which cover all of 2021 until his employment ended in April of 2021. Shirodkar Dec. at ¶ 16.  During that period, Ramirez was paid 54.00 hours of overtime.  Shirodkar Dec. at ¶ 16.

Opt-in Plaintiff Gomez did not submit a declaration in support of Plaintiffs' Motion, but in his consent form he claims he was not properly compensated for overtime hours.  See ECF No.

---

[4]    Suriano's consent form identifies him as "Felix jimenez [sic]" and "Felix Antonio Jimenez Suriano."  ECF No. 32-1 at p. 9.  And in Alvarado's declaration, Alvarado refers to him as "Felix Antonio."  Alvarado Declaration at ¶ 25.  Naked Taco has diligently searched its records for those names.  Shirodkar Dec. at ¶ 9.

[5]    The exhibits to Plaintiff's Motion are not labeled as exhibits.  It appears that Exhibit A is ECF No. 25-1, Exhibit B is ECF No. 25-2, and so on.

32-1 at p. 1.  Attached hereto as Exhibit "G" are payroll records for Gomez which cover his entire five-month tenure as a Naked Taco employee.  During his employment, Gomez was paid 619.40 hours of overtime, equating to $11,089.20 in overtime payments.  Shirodkar Dec. at ¶ 17.  Gomez was employed with Naked Taco for about 25 weeks, and thus he was paid an average of 24.78 hours of overtime each week.  Id.

As noted, there is no record of Suriano being employed with Naked Taco.  In Alvarado's declaration, he purports to attach a "screenshot of the work hours" of Suriano (who Alvarado refers to as "Felix Antonio").  Alvarado Declaration at ¶ 25.  That "screenshot" does appear to be of Naked Taco's Toast POS system, but it begs multiple questions.  First, there is absolutely no indication of the employee whose working hours are supposedly reflected on the screenshot.  Shirodkar Dec. at ¶ 18.  Second, there is absolutely no indication as to who took the screenshot, when it was taken or why Alvarado has it.  Id.  Third, there are references to months and days, but absolutely no indication of the year.  Id.  And fourth, and perhaps most curiously, *the screenshot reveals information that can only be accessed by a Naked Taco manager*.  Id.

Because Alvarado was never a manager and was never provided management-level access to Naked Taco's Toast POS system, his possession of this screenshot – which reflects information only accessible by managers – raises the additional question of whether Alvarado improperly accessed or manipulated Naked Taco's POS system during his employment with Naked Taco and/or after his employment while his Company was providing cleaning services to Naked Taco.

Id. at ¶ 19.   In any event, the "screenshot" does not support Plaintiff's Motion.[6]

### III.   Legal Argument and Analysis

Plaintiffs' Motion contains extensive case citations and accompanying parenthetical notations for the unremarkable propositions that the FLSA permits collective actions and that a court can conditionally certify a class and authorize notice.  But Plaintiffs' Motion is conspicuously devoid of any actual *analysis*.  Plaintiffs do not identify or explain the factors to be considered. And nowhere do Plaintiffs actually apply the relevant legal principles to the supposed "facts," which themselves are insufficient.[7]

Instead, Plaintiffs' Motion essentially represents 20+ pages of the following conclusory, *ipse dixit* "argument": (a) Plaintiffs worked for Defendants; (b) Plaintiffs were not paid overtime; (c) the FLSA permits collective actions; and (d) courts can conditionally certify a class and authorize notice – therefore (e) Plaintiffs' Motion should be granted.  Completely missing is any connection or analysis between those points, especially between points (d) and (e).  As explained

---

[6]     Alvarado also claims an "employee from Guatemala fainted on the job due to exhaustion."  Alvarado Declaration at ¶ 11.  Particularly in light of his injuries due to the aforementioned 2017 kitchen fire, Pagano is especially sensitive to the safety of Naked Taco's employees.  Pagano Dec. at ¶ 15.  Pagano and Shirodkar have absolutely no knowledge or awareness of a Naked Taco employee having "fainted," and because location managers generally advise Pagano and Shirodkar of incidents of such magnitude, Naked Taco does not believe this alleged incident ever occurred.  Pagano Dec. at ¶ 16; Shirodkar Dec. at ¶ 21.  As with the "screenshot," this allegation begs multiple questions, none of which Alvarado bothers to answer: What was the employee's name?  When and where did this supposedly occur?  Did he personally witness this alleged incident?  On what basis does he conclude that "exhaustion" was the cause of the supposed fainting (say, as opposed to an underlying medical condition)?  Again, Alvarado's testimony is not credible, as payroll records conclusively contradict his assertion under oath that "Naked Taco never paid me an overtime premium for overtime hours worked."

[7]     See, e.g., Rivera v. Lux Cosmetic Surgery Ctr., Corp., 1:18-CV-23635-UU, 2018 WL 6448382, at *3 (S.D. Fla. Oct. 26, 2018) ("Plaintiff's Motion to Certify provides an in-depth recitation of the history and background of the FLSA, accompanied by copious citations to Circuit law on FLSA collective actions…. Unfortunately, Plaintiff's Motion to Certify is largely devoid of facts demonstrating that there are other similarly situated employees who desire to opt in.").

below, such an analysis results in the denial of Plaintiffs' Motion, so the absence of any analysis from Plaintiffs is not surprising.  And as to point (b), as set forth above Plaintiffs were, in fact, paid overtime.

A.      **FLSA Collective Actions**

The FLSA permits a "collective action" to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The Eleventh Circuit has endorsed, but not mandated, a two-stage procedure to determine whether it is appropriate to maintain an FLSA case as a collective action.  Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216-19 (11th Cir. 2001).  At the notice stage, also known as the conditional certification stage, a district court determines whether similarly situated employees should be notified.  Morgan, 551 F.3d at 1260-61.  "The second stage is triggered by an employer's motion for decertification."  Morgan, 551 F.3d at 1261 (citing Anderson v. Cagle's, 488 F.3d 945, 953 (11th Cir. 2007)).

To conditionally certify a class and permit notice, a court must first "satisfy itself that there are other employees ... who desire to 'opt-in' *and* who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."  Kemar Fung Chung v. Affordable Battery, Inc., 12-60612-CIV, 2012 WL 3759029, at *1 (S.D. Fla. Aug. 29, 2012) (quoting Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991)).  To demonstrate both aspects of the initial inquiry, the plaintiff has the burden of showing "a 'reasonable basis' for his claim that there are other similarly situated employees."  Morgan, 551 F.3d at 1260.

Although Plaintiffs argue that a "lenient standard" applies at this initial stage, the standard is not insignificant or "invisible."  Rappaport v. Embarq Mgmt. Co., 607CV468ORL19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007).  "Indeed, *federal courts across the Middle and*

*Southern Districts of Florida have **routinely** denied requests for conditional certification where, as here, the plaintiffs attempt to certify a broad class based only [on] the conclusory allegations of few employees*." Id. (citing long string cite of Florida cases); see also Chung, 2012 WL 3759029, at *1 ("a plaintiff cannot rely on speculative, vague, or conclusory allegations"); Parrilla v. Allcom Const. & Installation Services, LLC, 608CV-1967-ORL-31GJK, 2009 WL 1456442, at *1 (M.D. Fla. May 22, 2009) (motion for conditional certification "cannot be based on the conclusory allegations of a few employees").  These cases properly give effect to the Eleventh Circuit's admonition that "the power to authorize notice *must* be exercised with discretion and *only* in appropriate cases." Haynes v. Singer Co., Inc., 696 F.2d 884, 886 (11th Cir. 1983).

**B.      Plaintiffs Fail to Establish the Purported Class is "Similarly Situated"**

As noted, Plaintiffs broadly seek conditional certification of a class of "all hourly employees who were either: 1) not paid the correct overtime premium for their overtime hours (Underpaid Overtime); and/or 2) were not paid all wages, regardless of the hourly rate, for all hours worked (Underpaid Hours)."  Motion at p. 15.[8]  Under no circumstances can Plaintiffs proceed collectively as to the second component, which purports to allege entitlement to *non-overtime, non-FLSA* wages; absolutely no such claim exists in Plaintiffs' complaint, and as a non-FLSA claim it could not be brought collectively in any event.

"Regarding the 'similarly-situated' requirement, courts commonly consider five factors at the notice stage: (1) whether the plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period;

---

[8]      Plaintiffs' complaint fails to specify or identify a purported class.  Plaintiffs allege only that "[d]uring the relevant period, Defendants employed numerous other restaurant employees who worked overtime hours and were non-exempt under the FLSA," and "[t]here exists a class of non-exempt restaurant employees of Defendants that would benefit from becoming members of a class to recover due and owing wages."  Complaint [ECF No. 1] at ¶¶ 38 – 39.

(4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claimed violations are similar." Turnbull v. Bowman Consulting Group, Ltd., Inc., 20-60864-CIV, 2020 WL 10815979, at *4 (S.D. Fla. Sept. 29, 2020) (citing Smith v. Tradesmen Int'l, Inc., 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003)).

Plaintiffs "must make '*substantial*' and '*detailed*' allegations supported by affidavits to satisfy the 'similarly situated' element." Palacios v. Boehringer Ingelheim Pharm., Inc., 10-22398-CIV-UU, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011) (quoting Grayson v. K–Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996)). "[A] showing of similarity requires more than generalized allegations." Rife v. Fronton Holdings, LLC, 219 F. Supp. 3d 1256, 1262 (S.D. Fla. 2016) (internal quotation marks and citation omitted). In the absence of sufficient proof, conditional certification does not further the interests of judicial economy and "would undoubtedly present a ready opportunity for abuse." Anderson v Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007) (internal quotation marks and citation omitted).[9]

Here, Plaintiffs' Motion fails to even mention the above-noted five factors, much less provide "substantial" or "detailed" evidence as to those factors, and Plaintiffs wholly fail to apply the factors to the circumstances of this case. At most, Plaintiffs have merely advanced insufficient generalized allegations.

Of the five Plaintiffs, only three submitted declarations in support of the Motion: Alvarado, Zambrano and Ramirez. As noted, Alvarado's and Ramirez's declarations contain demonstrable

---

[9]     Plaintiffs may not use conditional certification as a "fishing expedition to search for additional plaintiffs," and "certification is not the appropriate means to discover other plaintiffs to join the lawsuit." Zuliani v. Santa Ana, LLC, 17-62080-CIV, 2018 WL 1894723, at *5 (S.D. Fla. Mar. 14, 2018) (internal quotation marks and citations omitted), report and recommendation adopted, 17-62080-CIV, 2018 WL 3730192 (S.D. Fla. Apr. 5, 2018).

falsehoods in claiming they were never paid overtime compensation.  Beyond that, Plaintiffs fail to establish *any* of the five factors, much less all five.

Plaintiffs do not identify a job title, merely referring to themselves as "Hourly Laborers." Although they vaguely describe similar job duties, "[t]he similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the <u>mere facts</u> of job duties and pay provisions.'"  <u>Rivera v. Lux Cosmetic Surgery Ctr., Corp.</u>, 1:18-CV-23635-UU, 2018 WL 6448382, at *3 (S.D. Fla. Oct. 26, 2018) (quoting <u>Anderson v. Cagle's, Inc.</u>, 488 F.3d 945, 953 (11th Cir. 2007) (underlining in original).  Plaintiffs' purported proposed class is improperly broad on its face, described as "*all* hourly employees" without any limitations based on job title, duties or responsibilities.  This is especially problematic in light of Naked Taco operating restaurants: Plaintiffs do not even bother acknowledging that Naked Taco's "hourly employees" necessarily include tipped employees, much less make an effort to limit the purported class.

Plaintiffs fail to evidence that they worked in the same geographic location.  Alvarado claims to have worked at all three Naked Taco locations, but neither Zambrano nor Ramirez identify *any* particular location at which they worked.  As to the third factor, Alvardo, Zambrano and Ramirez each allege their respective tenures of employment, but none of them indicate the specific relevant time periods of the alleged violations.  This deficiency is magnified as to Alvarado, who claims to have worked for Naked Taco for about five years.  As such, Plaintiffs have failed to evidence that the alleged violations took place during the same time period.

Plaintiffs fail to substantively discuss or analyze the fourth and fifth factors.[10]  Instead,

---

[10]     For quick reference, those factors are (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claimed violations are similar.  <u>Turnbull</u>, 2020 WL 10815979, at *4.

Plaintiffs merely allege, in a wholly conclusory fashion, that they were not paid overtime. Alvarado Declaration at ¶ 16; Zambrano Declaration at ¶ 11; Ramirez Declaration at ¶ 8.  There are no allegations whatsoever as to a "policy" or "practice," nor any allegations as to how such a "policy" or "practice" was established or maintained, or by whom.  And there are no allegations as the degree to which the actions constituting the claimed violations are similar.

"Federal courts *routinely* decline to certify collective action when the plaintiff's assertions are conclusory or lack evidentiary foundation." Palacios v. Boehringer Ingelheim Pharm., Inc., 10-22398-CIV-UU, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011) (citing Haynes v. Singer, 696 F.2d 884, 887–88 (11th Cir. 1983), and Ulysse v. Divosta Bldg. Corp., 06-80338-CIV, 2006 WL 3618449, at *2 (S.D. Fla. Dec. 11, 2006)).

In Turnbull v. Bowman Consulting Group, Ltd., Inc., 20-60864-CIV, 2020 WL 10815979 (S.D. Fla. Sept. 29, 2020), the plaintiffs submitted four declarations in support of a conditional certification motion, each one asserting that "Defendant subjected Plaintiff and the other [Customer Outreach Specialists] to a common, widespread and corporately-derived policy of requiring them to work off-the-clock, resulting in unpaid overtime compensation." Id. at *5 (alteration in original).  This allegation – which actually goes further in alleging a "policy" or "practice" than anything asserted by Plaintiffs in this case – was deemed by Judge Singhal to be "bare-bones" and insufficient. Id.  See also, e.g., Eggnatz v. Coventbridge (USA) Inc., 18-61250-CIV, 2019 WL 1171455, at *2–3 (S.D. Fla. Mar. 13, 2019) (denying motion to conditionally certify where plaintiffs merely alleged "unlawful employment and pay policies" that required plaintiffs to "routinely work[] over 40 hours a week") (alteration in original); Herrera v. Mattress Firm, Inc., 17-22048-CIV, 2017 WL 4270619, at *6 (S.D. Fla. Sept. 26, 2017) (denying motion to conditionally certify where plaintiffs failed to allege "any information regarding what kind of

payroll scheme the opt-in class members were subject to"); <u>Robinson v. Dolgencorp, Inc.</u>, 506CV-122-OC-10GRJ, 2006 WL 3360944, at *6 (M.D. Fla. Nov. 13, 2006) (denying motion to conditionally certify where there was "no suggestion that this case involves a common plan or corporate policy"); <u>Greenhill v. Wise Alloys, LLC</u>, 3:12-CV-01849-HGD, 2013 WL 5350662, at *7 (N.D. Ala. Sept. 23, 2013) (denying motion to conditionally certify where plaintiff failed to evidence that a "broad" proposed class of "all hourly production employees" was "affected by a common policy or plan that violates the FLSA" or "share[d] common supervision, jobs or work locations").

Simply put, Plaintiffs' bare-bones assertion that they were not paid overtime is grossly insufficient as a matter of law.[11]

### C.      Plaintiffs Fail to Show there Exist Other Employees Who Desire to Opt-In

Plaintiffs' declarations offer nothing beyond conclusory assertions that other employees would join the lawsuit if provided notice. But to show the existence of other employees who desire to opt-in, Plaintiffs "cannot rely on speculative, vague, or conclusory allegations." <u>Kemar Fung Chung v. Affordable Battery, Inc.</u>, 12-60612-CIV, 2012 WL 3759029, at *1 (S.D. Fla. Aug. 29, 2012) (citing <u>Dybach</u>, 942 F.2d at 1567–68); <u>see also</u> <u>Alvarez v. Sun Commodities, Inc.</u>, No. 12-60398-CIV, 2012 WL 2344577, at *2 (S.D. Fla. June 20, 2012) (FLSA plaintiffs seeking conditional certification "cannot rely on speculative, vague, or conclusory allegations").

---

[11]      On page 14 of their Motion, Plaintiffs claim that "Employees who are victims of a common decision, policy, plan, or practice are similarly situated for purposes of the FLSA." Plaintiffs then parenthetically cite numerous cases involving company-wide or common policies. ***But Plaintiffs do not identify <u>any</u> such "common decision, policy, plan, or practice."*** Again, Plaintiffs merely allege a failure to pay overtime. As the above-cited cases make clear, simply alleging a failure to pay overtime is not sufficient to establish a "decision, policy, plan, or practice." If such bare-bones allegations were sufficient, then every single FLSA overtime plaintiff would necessarily be entitled to conditional certification of a class.

Plaintiffs' conclusory allegations are similar to those advanced by the plaintiff in <u>Pina v. FedEx Freight, Inc.</u>, 17-24274-CIV, 2018 WL 1660671 (S.D. Fla. Apr. 5, 2018).  There, Judge Moreno held that "boilerplate statements that other employees 'were not properly paid' and 'would likely benefit from this claim' do not satisfy the Eleventh Circuit's standard requiring a plaintiff to show that 'there are other employees ... who desire to 'opt-in....'''  <u>Id.</u> at *2.  "The mere anticipation that others may want to join the lawsuit ... is insufficient by itself."  <u>Id.</u> (quoting <u>Kubiak v. S.W. Cowboy, Inc.</u>, No. 312-CV-1306-J-34JRK, 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014)).  And even though two non-named Plaintiffs have joined this case, that "is not persuasive in the absence of other evidence…."  <u>Wallace v. Club Climaxxx Inc.</u>, 1:17-CV-22585-UU, 2018 WL 2688798, at *4 (S.D. Fla. May 11, 2018).  Plaintiffs' alleged "conversations" with co-workers are also insufficient.  <u>See</u> <u>Palacios v. Boehringer Ingelheim Pharm., Inc.</u>, 10-22398-CIV-UU, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011) ("Assertions based on 'beliefs' and 'conversations' are conclusory and provide no meaningful details, thus they fall short of the 'substantial' and 'detailed' allegations necessary").[12]

### D.    This Case is Centered on Alvarado's Company

Plaintiffs characterize the issue of Plaintiffs having worked for Alvarado's Company in providing services to Naked Taco as a "distraction" and a "sham."  Motion at p. 7, ¶ 45.  Notably, Plaintiffs do not deny they worked for Alvarado's Company in providing services to Naked Taco. Instead, it is Plaintiffs who seek to distract the Court by asserting their alleged unpaid overtime also includes "pre-closing work."  But that does not change the fundamentally limited nature of

---

[12]    Alvarado mentions Gomez and Suriano as individuals who supposedly told Alvarado they would like to join this case.  Alvarado Declaration at ¶¶ 24 – 25.  Those are the two, and only two, opt-in Plaintiffs who have joined this case – and they both did so without conditional certification.

this case.  The one thing Plaintiffs have in common is they worked for Alvarado's Company in providing services to Naked Taco.  And that predominant feature, notwithstanding any other argument, renders this case completely inappropriate for conditional certification.

Plaintiffs have provided no evidence that Naked Taco employees *who were not also Alvarado's Company's workers* are interested in joining this case.  And ultimately, Plaintiffs' status as Alvarado's Company's workers will dominate the merits of this case.  As noted earlier, during the one-year period in which Alvarado's Company provided services to Naked Taco, Naked Taco paid the Company **$238,000.00** – an unquestionably substantial sum.  Far from a "distraction," a central issue in this case will be the extent to which *Alvarado's Company* paid Plaintiffs, as its employees, to perform services for Naked Taco.[13]  As such, Plaintiffs' claims are definitely *not* "amenable to generalized evidence" as necessary to justify conditional certification. Palacios v. Boehringer Ingelheim Pharm., Inc., 10-22398-CIV-UU, 2011 WL 6794438, at *6 (S.D. Fla. Apr. 19, 2011) (citing Mike v. Safeco Ins. Co. of Am., 274 F.Supp.2d 216, 219 (D. Conn. 2003)).[14]

---

[13]     Assuming Alvarado's Company fully and properly paid Plaintiffs for their work, presumably Plaintiffs are not expecting to "double dip" by seeking compensation from Naked Taco which Plaintiffs have already received from Alvarado's Company.

[14]     Alvarado claims he "*work[ed]*" for Naked Taco until June 27, 2022, Alvarado Declaration at ¶ 4, but Alvarado's *employment* with Naked Taco ended in May of 2021 – right before he formed his Company – and thus Alvarado's payroll records also end in May of 2021. Clearly, then, Alvarado is including the one year period during which Alvarado was not a Naked Taco employee, but instead was providing services to Naked Taco through his own Company. Putting aside whether Alvarado was a "contractor" or an "employee" during that one year period, it is indisputable that Alvarado's Company was providing services to Naked Taco during that one year period and that Alvarado's Company was handsomely compensated to the tune of $238,000.00 during that one year period.  It is unclear to what extent, if any, Alvarado took that substantial sum into account when calculating his alleged damages in this case.

### E.   Plaintiffs' Standing to Bring a Collective Action

This action was filed on August 5, 2022.  Plaintiffs did not file their Motion until October 17, 2022 – about ten weeks later.[15]  Significantly, at the time Plaintiffs filed their Motion, *Plaintiffs had not filed their own consent forms*.  Such failure, standing alone, is fatal to a purported collective action.

Section 256 of the Portal-to-Portal Act, 29 U.S.C. § 256, governs when an FLSA action is "commenced."  For a collective action, the action is not commenced by a named plaintiff *unless and until the named plaintiff files his or her own consent form*.  See Lussi v. Design-Build & Eng'g, Inc., 09-23446-CIV, 2010 WL 1571158, at *1 (S.D. Fla. Apr. 20, 2010).  "Courts in this district that have considered whether the statutory language requires the named plaintiffs in an opt-in action to file consents have concluded it does."  Id. (collecting cases).  Where, like here, plaintiffs file a purported "collective action" without also filing their own consent forms, the complaint should be dismissed with leave to amend the complaint and file consent forms.  See Lago v. Amoa Const. & Dev. Corp., 08-20994-CIV, 2008 WL 4540062, at *3 (S.D. Fla. Oct. 10, 2008).  Although Plaintiffs have subsequently filed consent forms after filing their Motion, that does not cure the infirmity that Plaintiffs' complaint and Motion were *both* improperly filed without Plaintiffs having filed consent forms.

### F.   Plaintiffs' Motion Blatantly Exceeds the 20-Page Limit

"Absent prior permission of the Court, neither a motion and its incorporated memorandum of law nor the opposing memorandum of law shall exceed twenty (20) pages …."  See S.D. Fla. L.R. 7.1(c)(2).  "Local Rules are 'designed to help the court identify and organize the issues in the

---

[15]      Plaintiffs' request on page 17 of the Motion for "expedited" notice and discovery is completely at odds with their delay in filing their Motion after filing the complaint.

case.'" Porter v. Collecto, Inc., 14-21270-CIV, 2014 WL 2612317, at *1 (S.D. Fla. June 11, 2014) (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009)).  "District Court local rules have the force of law."  Id. (citing Hollingsworth v. Perry, 558 U.S. 183, 191 (2010), and Castro v. Dir., F.D.I.C., 449 Fed. Appx. 786, 788 (11th Cir. 2011)).

Plaintiffs' Motion is 29 pages, and Plaintiffs did not request or receive permission from the Court to exceed the page limits.  Accordingly, Plaintiff's Motion clearly and cavalierly violates Local Rule 7.1(c)(2).[16]

This Court would be well within its discretion to deny Plaintiffs' Motion based on the blatant violation of Local Rule 7.1(c)(2).  See, e.g., Porter v. Collecto, Inc., 14-21270-CIV, 2014 WL 2612317, at *2 (S.D. Fla. June 11, 2014) (granting motion to strike response to motion to dismiss which exceeded page limit); D.A.M. Productions, Inc. v. Acosta Restituyo, 17-22962-CIV, 2018 WL 11372108, at *1 (S.D. Fla. Mar. 13, 2018) (denying motion for reconsideration based, in part, on violation of Local Rule 7.1(c)(2)).

### G.   Prior Lawsuits

Plaintiffs note the filing of three prior lawsuits against Naked Taco.  Plaintiffs' Motion at p. 8, ¶¶ 49 – 52.  For one thing, each of those cases was filed, *and settled without any finding of liability*, outside the statute of limitations applicable to this case.  But beyond that, Plaintiffs seemingly fail to realize that these lawsuits actually militate *against* granting Plaintiffs' Motion, as they suggest that individual Naked Taco employees are perfectly capable of pursuing their own claims without the need for conditional certification and notice in this case.  As Judge Ungaro

---

[16]   Included *as part of* Plaintiffs' Motion are a form notice and a consent form.  *These documents are not exhibits to the motion – they are incorporated within the motion itself*.  This is confirmed by (a) the page numbers in the bottom-left corner of the Motion; and (b) the first exhibit to the Motion, Exhibit A, being a completely different document which immediately follows page 29 of the Motion.

observed in Rivera v. Lux Cosmetic Surgery Ctr., Corp., 1:18-CV-23635-UU, 2018 WL 6448382, at *3 (S.D. Fla. Oct. 26, 2018), referencing prior lawsuits merely "point[s] out that those who wished to pursue claims against these Defendants have done so in their own actions, *thereby negating any reason for conditional certification*."

## IV.  Conclusion

Plaintiffs fail to demonstrate entitlement to conditional certification.  Plaintiffs' limited evidence consists of vague, generalized and boilerplate declarations which fall far short of even addressing, much less satisfying, the factors to be considered.  Plaintiffs merely allege a failure to pay overtime, which is demonstrably false based on payroll records, without any indication of a common policy or practice, or any other requisite details.  And contrary to Plaintiffs' wishful thinking, Alvarado's Company is not a "distraction" or a "sham," but a central issue in this case, as Plaintiffs worked for that Company in providing services to Naked Taco, and Naked Taco paid that Company $238,000.00.  This key issue is narrowly focused on the current Plaintiffs, making conditional certification all the more unjustified and inappropriate.[17]

Dated:  November 21, 2022          Respectfully submitted,


                                   *s/ Adam S. Chotiner*
                                   ADAM S. CHOTINER, ESQ.
                                   Florida Bar Number 0146315
                                   SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.
                                   7777 Glades Road, Suite 400
                                   Boca Raton, FL 33434
                                   Tel.:  (561) 477-7800
                                   Fax:  (561) 477-7722
                                   achotiner@sbwh.law
                                   *Counsel for Defendants*

---

[17]  Should the Court grant Plaintiffs' Motion, in whole or in part, then Defendants request an opportunity to separately address the proposed notice and consent forms included as part of Plaintiffs' Motion, particularly since, as explained above, those items are included in the portion of Plaintiffs' Motion which exceeds the 20-page limit.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*s/ Adam S. Chotiner*</u>
ADAM S. CHOTINER, ESQ.

<u>**SERVICE LIST**</u>

*Apolonio Alvarado, et al. v. Yes Naked Taco Prom, LLC, et al.*
Case No. 0:22-cv-61463-JEM
United States District Court, Southern District of Florida

| | |
|---|---|
| Brody Max Shulman, Esq.<br>E-Mail: brody@pba-law.com<br>Jorge Freddy Perera, Esq.<br>E-Mail: freddy@pba-law.com<br>Perera Barnhart Aleman<br>12555 Orange Drive, Second Floor<br>Davie, FL 33330<br>Tel:   (786) 485-5232<br>Counsel for Plaintiffs<br>*Via CM-ECF* | Adam S. Chotiner, Esq.<br>E-Mail: achotiner@sbwh.law<br>Shapiro, Blasi, Wasserman &<br>Hermann, P.A.<br>7777 Glades Rd., Suite 400<br>Boca Raton, FL  33434<br>Tel:   (561) 477-7800<br>Fax:   (561) 477-7722<br>Counsel for Defendants<br>*Via CM/ECF* |